02cv2031 AFF

FILED
OCT 1 5 2003

David Waters #141241
Docket #no 302-cv-2031-DSS
v.
Warden Brian Murphy etal

State of Conn } ss.
Bridgeport County

A-F-F-I-D-A-V-I-T

I declare under penalty of perjury that the
that following is true and correct

I am the plaintiff in the attached
cause of action and all #9 exhibit-list.
David Waters 141241

Pro-SE
David Waters # 141241 -  10-9-03
BCC 1106 North Ave
BPT Conn 06604

David Waters #141241
Docket no. 3:02cv2031-DJS-TPS

Waters
vs
Warden Brian K. Murphy

## Certification

David Waters 141241

I hereby certify that a copy of the foregoing was mail to the following assist att Gen Richard T. Bigger, at 110 Sherman St Hartford. Conn 06106, on and about 10-7-03 — 10-9-03

Pro-SG
From: David Waters #141241 - 10-26-03
Bcc 1106 north Ave
Bpt Conn 06604

# NORTHERN
# CORRECTIONAL INSTITUTION
# INMATE HANDBOOK
# 2002

Exhibit 1



# CONNECTICUT
# DEPARTMENT OF CORRECTION

*Mission Statement:*

*The Department of Correction shall protect the public, protect staff and ensure a secure, safe and humane environment for offenders in a climate that promotes professionalism, respect, integrity, dignity and excellence.*

Exhibit E

# Disciplinary Report - Page 1
## Connecticut Department of Correction

CN 9503
1/10/94

| | |
|---|---|
| Unit: MacDougall / Walker | Report date: 7/12/02 | Report no. |
| Inmate name: Waters, David | I.D. no. 141241 | Housing: B1-COU |
| Location: A108 Counselor's office | Incident Date: 7/12/02 | Time: 2:00 p.m. |
| Charge: Threats | | Class: A |

On July 12, 2002, this writer requested to see I/m Waters #141241 from B1-21 cell, in order to conduct a legal call, per his own written request. Upon entering the Counselor's office, I/m Waters immediately shouted at this writer in a threatening manner, and said "Stop playing with me ~~asshole~~! I'm not a dumb ass nigger." This writer then tried to explain to I/m Waters that the day was not over although the reason he was called to the office was for his legal call. I/m Waters then shouted once more at this writer. He was then asked to leave the room and lock-up by this writer. I/m Waters then yelled out "~~fuck you asshole, you ain't~~ mine." He then placed his paperwork on the desk and began to approach this writer in a threatening manner w/ his hands clenched in a fist. Officer Frank and C/O Miller immediately ~~intervened~~ and gave I/m Waters ~~a direct order to lock up~~. I/m Waters then began to yell out "fuck you! you little asshole! you'll see!" I/m Waters then turned around and was escorted by officer Frank to B1-21 cell.

**Witness(es):**

Reporting employee: Roy L---
Title: C/C
Date: 7/12/02
Time: 2:00 p.m.
Employee request copy: ✓ yes

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

[X] Administrative detention  Date: 7-12-02  Time: 3:15 p.m.
[ ] Interview accused  [ ] Informal Disposition

Custody supervisor / unit manager signature: [signature]
Title: LT  Date: 7-12-02  Time: 4:30 p.m.

## INMATE NOTICE

Delivered by: Brown R
Title: C/O  Date: 7-12-02  Time: 4:45 p.m.

Exhibit 5

S/C

# Disciplinary Process Summary Report – Page 1

**Connecticut Department of Correction**

CN 950
1-14-94

| Unit: MCDOUGALL/WALKER | Report #: MWCI 0207060 | Report Date: 7/12/02 | Hearing Date: 7-24-02 |
|---|---|---|---|
| Inmate Name: Waters, David | | ID #: 141241 | Housing: B1/RH409 |
| Reporting Employee: Massa | | Title: C/C | |
| Investigator: Miller | | Advocate: N/A | |
| Inmate Appearance: ✓ Yes / No | | Reason: Refused | |

| | | | |
|---|---|---|---|
| ☐ | Suspended sentence | | |
| ☐ | Deferred prosecution | No. of days | Through |
| ☐ | Charge dismissed | By | Reason |

Continuances (dates and reasons): 7/23/02 – 8/6/02 – pending witness statement /s/ P. Massa

## SUMMARY

| | Charge/class | Plea | Finding | Sanctions |
|---|---|---|---|---|
| Original | Threats/A | NG | Guilty | 15 Days Pun. Seg 7-12-02 til 7-26; 60 LOV 7-27-02 thru 9-23-02; 60 LOC 7-27-02 thru 9-23-02 |
| Substitute | | | | |

☐ Confidential Information     Reliability

Documentation submitted: N/A
☐ Incident report
☐ Use of force report
☐ Medical incident report
☐ Other (specify)

**Witness name:** Miller C/O.     ☐ appearance
Testimony: See attached statement

**Witness name:** C/O's Brown, Thibideau     ☐ appearance
Testimony: See attached statements

**Witness name:** C/O Frink, Desauta     ☐ appearance
Testimony: See attached statements

| Witness exclusion | Name | | Reason |
|---|---|---|---|

Physical evidence, written testimony:

N/A

Exhibit I4

All my Witness

(1.) CTO Miller
(2.) C/O Desousa
(3.) C/O Frink
(4.) C/O R. Brown
(5.) C/O Thibodeau

All who work at Walker CI 1151 East St South Suffield, Conn 06080



# Disciplinary Supplementary Information
## Connecticut Department of Correction

CN 9505
1-14-94

| Addendum to: | ☐ Disciplinary report | ☐ Disciplinary process summary |
|---|---|---|
| | ☒ Disciplinary investigation report | ☐ Page (specify) |

Section:

Inmate name: Waters, David

Unit: MWCI

Report no.:

Report date: 07/15/02

Time: 2⁰⁰  ☐ a.m.  ☒ p.m.

Text (continued): On 07/12/02 at approximately 2pm said inmate and CC Mcusa were in a verbal discussion regarding said inmate's legal calls and an assumed preset time. Both parties where speaking simultaneously not listening to the other - In as much as this became verbal banter this staff member and C/O Frank Scimple stepped in and ordered said inmate to depart the area which he did without incident.

Part of Exhibit
II
4

Signed: [signature] C/O

Date: 07/15/02

# Disciplinary Supplementary Information
## Connecticut Department of Correction

CN 9506
1-14-94

| Addendum to: | ☐ Disciplinary report | ☐ Disciplinary process summary |
| --- | --- | --- |
| | ☑ Disciplinary investigation report | ☐ Page (specify) |

**Section**

**Inmate name:** Waters, David  #141241

**Unit:** MWCI

**Report no.**

**Report date**

**Time:** ☐ a.m. ☐ p.m.

**Text (continued):**

This officer does not recall Inmate Waters #141241 ever stating that he owned a counselors ass or was going to get his ass.

**Signed:** [signature]

**Title:** C/O

**Date:**



# Disciplinary Supplementary Information
## Connecticut Department of Correction

CN 950E
1-14-94

Addendum to: ☐ Disciplinary report   ☐ Disciplinary process summary
☒ Disciplinary investigation report   ☐ Page (specify)

Section

Inmate name: Waters David
Unit: B-1 unit
Report no.:
Report date: 7/15/02
Time: 2:00 ☐ a.m. ☒ p.m.

Text (continued): On 7/12/02 while in B-1 unit a verbal discussion between counselor Massa and inmate Waters. This officer has no knowledge of any threat.

Signed: [signature]
Date: 7/15/02



# Disciplinary Hearing Appeal - Page 1
## Connecticut Department of Correction

CN 95
Attachment
1-11-9

You have been found guilty of a disciplinary offense and have received sanctions. You may appeal the hearing officer's decision by filling out both pages of this form—please print—and by placing it in the facility disciplinary appeal mail box. Please include copies pages 1 and 2 of the disciplinary report and pages 1 and 2 of the disciplinary process summary report (decision).

| Inmate name: David Waters | Inmate no: 141241 | Date: July 24, 2002 |
|---|---|---|
| Facility: Walker Reception and Special Management | Charge: Threats | Report date: 7-12-02 |
| Date hearing completed: July 24, 2002 | Facility: Walker Reception and Special Management | |

**Sanctions imposed:** 15 days Punitive Segregation 7-12-02 thru 7-26-02
60 days Loss of Visit 7-27-02 thru 9-23-02
60 days Loss of Commissary 7-27-02 thru 9-23-02

**Date you received your copy of the report:** July 24th, 2002

**Date you saw the disciplinary investigator:** July 15th, 2002 (possibly)

**Did you see an advocate:** [ ] yes  [✓] no

**If yes, name of advocate:**

**Date you saw the advocate:**

**Was the advocate one of a list of choices:** [✓] yes  [ ] no

**Did you identify witness(es) to the investigator:** [✓] yes  [ ] no

**If yes, name(s) of witness(es):** Correctional Treatment Officer Miller, Correctional Officer Brown, Correctional Officer Thibideau, Correctional Officer Fink, & Correctional Officer Desausa

**Did your witness(es) testify in person:** [ ] yes  [✓] no

**If no, what was(were) the reason(s) given:** It is unknown to me why the Correctional Officers listed above did not testify in person on my behalf. The Correctional Officers did give written statement on my behalf though.

**Did the hearing officer hear your side of the case:** [✓] yes  [ ] no

**If no, why not:**

**Describe what you told the hearing officer:** I informed D.H.O. Murray: the person who wrote the (ticket) D.R. was verbally abusive to me; the charge was false; and I had several Correctional Officers as witnesses on my behalf, therefore I am pleading not guilty. And Counselor Massa's manner and D.R. is in vicious violations of the Department of Correction Administrative Directive 2.17 Employee Conduct.



# Restrictive Status Report of Hearing for Placement or Removal, Page 1
## Connecticut Department of Correction

Cn 9402
Attachment D
Rev. 9-8-95

Facility: NORTHERN CI

Inmate name: WATERS, DAVID | Inmate number: #141241

Hearing: ■ Administrative Segregation ☐ Close Custody for CD ☐ Close Custody for SRGTMs

## SECTION 1: HEARING

Date: August 20, 2002 | Time: 9:35am

Hearing Officer: Stephen Clapp CC | Recorder: Rich McNish CC

■ Advocate requested by inmate ☐ Advocate not requested ☐ Advocate not requested, but assigned

Advocate: Counselor C. Kay

Summary of Placement Rationale: On July 12, 2002 in the CD unit I/M Waters received a DR for threats. He shouted obscenities and approached a staff member with clenched fists. He was given a direct order to return to his cell and he refused to obey. He was then escorted to RHU in which he became agitated, threatened to kill the staff member and tried to break away from the escort. Staff ordered him to stop resisting but he continued to struggle. As a result he was escorted to the prone position and placed on a stretcher to be escorted to RHU. Therefore, based on his threatening behavior and disruption to the unit, a special classification hearing was held.

| | |
|---|---|
| 1. Staff witness name: N/A | 1. Title: N/A |
| 1. Staff witness statement: N/A | |
| 2. Staff witness name: N/A | 2. Title: N/A |
| 2. Staff witness statement: N/A | |

Inmate Statement: Inmate Advocate Statement enclosed. In the hearing I/M Waters stated, "The disruption DR holds no truth and it's a violation to my rights. The threats DR is violation of my constitutional rights. The counselor provoked me and that is the reason I spit on him. The counselor was inappropriate in his actions. I'll be discharging in April 2005 and I look forward to seeing my son.

Inmate witness name: N/A | Inmate number: N/A  *David Waters*
Inmate witness statement: N/A | 141241



# STATE OF CONNECTICUT
## MACDOUGALL-WALKER CORRECTIONAL INSTITUTION
### 1153 East Street South
### SUFFIELD, CONNECTICUT 06080

Brian K. Murphy
Lead Warden

Exhibit # 7

TO:        David Waters #141291
           Walker Building

FROM:      Brian Murphy, Warden

DATE:      August 2, 2002

This response concerns your appeal of Disciplinary Report #MWCI0207060 for Threats incurred on 7/12/02.

After careful review of the totality of the information available and utilized by the Hearing Officer, I feel that the decision is consistent with the facts. Your appeal, therefore, is denied.

BKM/lli

c: DHO Meulemans
   Officer Miller
   file

*Exhibit # 8*

Cordon rule copy
A.D. 9.5, Code of Penal Discipline
Prepared for signature 1/26/98 - effective 2/16/98
Minor revisions made to cordon 1/30/98 sent out under memo

1. <u>Policy</u>. <u>Inmates shall be held to the same level of individual responsibility as a member of the free public. As such, all privileges shall be earned and retained through positive performance and respect for rules, order and authority.</u> Consistent with this policy, the Department of Correction shall provide for the orderly conduct of inmates by establishing rules of conduct and procedures to address misconduct. The Code of Penal Discipline shall establish acts of misconduct, the process for judging allegations of misconduct, and sanctions for violations. Disciplinary action shall be based on <u>credible evidence of misconduct, and shall be timely, impartial</u> and [*Fair - Just*] consistent. Sanctions shall be proportionate to the seriousness of the offense and the inmate's disciplinary record, and the disciplinary action shall serve to teach the offender the consequence of the misconduct and to enforce staff authority.

2. <u>Authority and Reference</u>.
   A. Connecticut General Statutes, Sections 18-7, 18-7a, 18-81, 18-98b through 18-98d.
   B. American Correctional Association Standards for the Administration of Correctional Agencies, June 1979, Standard 39.
   C. American Correctional Association, Standards for the Administration of Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4214 through 3-4236, 3-4240 and 3-4243.
   D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-3C-01 through 3-ALDF-3C-22.
   E. Administrative Directives 1.3, Administrative Directives, Manuals, Forms Management and Post Orders; 6.6, Reporting of Incidents; 6.14, Security Risk Groups; and 9.4, Restrictive Status.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:
   A. <u>Accessory</u>. Assisting a person to commit an act prohibited under this Code.
   B. <u>Attempt</u>. Conduct which is likely to result in an act prohibited by this Code.
   C. <u>Conspiracy</u>. Agreeing with one or more persons to participate in an act prohibited by this Code and any one of those persons acts in furtherance of the conspiracy.
   D. <u>Continuance</u>. Adjournment of a hearing until another time.
   E. <u>Contraband</u>. Anything not authorized to be in an inmate's possession or anything used in an unauthorized or prohibited manner.
   F. <u>Dangerous Instrument</u>. A weapon, or any other unauthorized object or substance, which may cause physical injury or death, under the circumstances in which it is possessed, used or attempted or threatened to be used, or is capable of being used.
   G. <u>Deferred Prosecution</u>. Deferral of the prosecution of a Disciplinary Report for a specific period of time.
   H. <u>Possess</u>. Having physical possession or exercising control over an object.
   I. <u>Privilege</u>. <u>A benefit bestowed upon an individual to which a person has no right or legal entitlement.</u>
   J. <u>Responsibility</u>. <u>An individual's personal obligation or accountability for performance.</u>

*Page # 1*

    K.    <u>Security Risk Group</u>.  A group of inmates, specifically designated by the Commissioner, which poses a threat to the safety of staff, the unit or other inmates.

    L.    <u>Self Defense</u>.  Protection of oneself from an unprovoked attack which cannot be avoided.

    M.    <u>Serious Physical Injury</u>.  Any injury which requires the individual to receive immediate medical treatment by a health care professional before the individual can continue normal activity.

    N.    <u>Suspended Sentence</u>.  The postponement of a disciplinary sentence for a specified period of time.

4.    <u>Notification</u>.  This Code shall be disseminated as specified below.  The Code shall be published in English and Spanish.

    A.    <u>Employees</u>.  Each direct contact employee shall receive a copy of the Code.  Direct contact employees shall receive instruction on the Code during pre-service orientation training.

    B.    <u>Inmates</u>.  Each newly admitted inmate shall receive a copy of the Code and instruction on the Code within two (2) weeks of admission to the Department of Correction.  Each inmate shall acknowledge receipt of the Code by signing a receipt which shall be placed in the inmate's file.  Unit Directives shall provide a process to provide information about the Code to any inmate who is illiterate, impaired, handicapped or does not speak English or Spanish.

5.    <u>General Provisions</u>.  <u>All privileges must be earned.  Each inmate shall be responsible to follow all rules, policies, staff direction, and satisfactorily comply with all work and program requirements to earn access to available privileges.  Access to any privilege with limited admission shall be offered to inmates who have maintained positive behavior and obedience to rules, regulations and staff direction.  Each facility shall develop a list of privileges available to inmates in general population.  The type of privileges available shall be based on a facility's security level and shall be authorized subject to the joint approval of the Deputy Commissioner of Programs and the Deputy Commissioner of Operations.</u>

6.    <u>Access to Privileges</u>.

    A.    <u>Newly Admitted Inmates. Upon admission, an inmate may be afforded access to all privileges available at the admitting facility, contingent upon conformity with institutional rules and staff direction.</u>

    B.    <u>Restrictive Status Inmates.  Inmates placed on a restrictive status or in a close monitoring unit shall lose access to privileges.  The Unit Administrator of a facility containing a restrictive housing or close monitoring unit may develop procedures and time frames in which an inmate may earn access to limited privileges based upon acceptable behavior and performance in accordance with the appropriate restrictive status or close monitoring programming.  The designated time frames shall be in addition to any penalty received prior to or during the placement on a restrictive status or in a close monitoring unit.  In all cases, the privileges for the restrictive housing unit shall be less than those in general population.</u>

5̶7.    <u>Unit Rules</u>.  Each unit shall establish its own written rules concerning inmate conduct.  These rules shall be published in the inmate handbook required by Administrative Directive 1.3, Administrative Directives, Manuals, Forms Management and Post Orders.  The rules shall be posted in inmate housing units and copies shall be placed in inmate libraries as appropriate. ~~The unit rules shall be reviewed annually and amended as necessary.  A copy of each unit's rules shall be submitted for the~~



Page # 2

    K.    <u>Security Risk Group</u>. A group of inmates, specifically designated by the Commissioner, which poses a threat to the safety of staff, the unit or other inmates.

    L.    <u>Self Defense</u>. Protection of oneself from an unprovoked attack which cannot be avoided.

    M.    <u>Serious Physical Injury</u>. Any injury which requires the individual to receive immediate medical treatment by a health care professional before the individual can continue normal activity.

    N.    <u>Suspended Sentence</u>. The postponement of a disciplinary sentence for a specified period of time.

4. <u>Notification</u>. This Code shall be disseminated as specified below. The Code shall be published in English and Spanish.

    A.    <u>Employees</u>. Each direct contact employee shall receive a copy of the Code. Direct contact employees shall receive instruction on the Code during pre-service orientation training.

    B.    <u>Inmates</u>. Each newly admitted inmate shall receive a copy of the Code and instruction on the Code within two (2) weeks of admission to the Department of Correction. Each inmate shall acknowledge receipt of the Code by signing a receipt which shall be placed in the inmate's file. Unit Directives shall provide a process to provide information about the Code to any inmate who is illiterate, impaired, handicapped or does not speak English or Spanish.

5. <u>General Provisions</u>. <u>All privileges must be earned. Each inmate shall be responsible to follow all rules, policies, staff direction, and satisfactorily comply with all work and program requirements to earn access to available privileges. Access to any privilege with limited admission shall be offered to inmates who have maintained positive behavior and obedience to rules, regulations and staff direction. Each facility shall develop a list of privileges available to inmates in general population. The type of privileges available shall be based on a facility's security level and shall be authorized subject to the joint approval of the Deputy Commissioner of Programs and the Deputy Commissioner of Operations.</u>

6. <u>Access to Privileges.</u>

    A.    <u>Newly Admitted Inmates. Upon admission, an inmate may be afforded access to all privileges available at the admitting facility, contingent upon conformity with institutional rules and staff direction.</u>

    B.    <u>Restrictive Status Inmates. Inmates placed on a restrictive status or in a close monitoring unit shall lose access to privileges. The Unit Administrator of a facility containing a restrictive housing or close monitoring unit may develop procedures and time frames in which an inmate may earn access to limited privileges based upon acceptable behavior and performance in accordance with the appropriate restrictive status or close monitoring programming. The designated time frames shall be in addition to any penalty received prior to or during the placement on a restrictive status or in a close monitoring unit. In all cases, the privileges for the restrictive housing unit shall be less than those in general population.</u>

~~5~~7. <u>Unit Rules</u>. Each unit shall establish its own written rules concerning inmate conduct. These rules shall be published in the inmate handbook required by Administrative Directive 1.3, Administrative Directives, Manuals, Forms Management and Post Orders. The rules shall be posted in inmate housing units and copies shall be placed in inmate libraries as appropriate. ~~The unit rules shall be reviewed annually and amended as necessary. A copy of each unit's rules shall be submitted for the~~

Page # 3

~~Commissioner's approval by January 30 of each year.~~

~~6~~8.   <u>Relation to Criminal Proceedings</u>.  Proceedings under the criminal code of the State of Connecticut against an inmate shall not cause the delay of proceedings under this Code.  ▓ ~~Any~~ dismissal, nolle or not guilty verdict in criminal proceedings~~,~~ shall not affect action under this Code.  Any serious criminal offense shall be reported to the Connecticut State Police for investigation and action.

~~7~~9.   <u>Classes of Offenses</u>.  There shall be three (3) classes of offenses:  A, B and C.  Class A offenses shall be the most serious offenses and Class C offenses the least serious.

~~8~~10.  <u>Authorized Sanctions</u>.  An inmate who is in violation of the Code shall be sanctioned in accordance with the provisions of this Section.

    A.   <u>Limits</u>.  Except as specifically provided in the Code the following punishment limits shall be observed:

        1.   for Class A offenses:  punitive segregation; ~~loss~~ <u>forfeiture</u> of good time; and two (2) different penalties;

        2.   for Class B offenses:  punitive segregation; ~~loss~~ <u>forfeiture</u> of good time; and one (1) penalty;

        3.   for Class C offenses:  ~~loss~~ <u>forfeiture</u> of good time and one (1) penalty.

    B.   <u>Punitive Segregation</u>.  Any commitment to punitive segregation shall be for a definite period of time, the maximum of which shall be:

        1.   for conviction of offenses Section ~~10~~ <u>12</u>(D) (Assault on a Department of Correction Employee), Section ~~10~~ <u>12</u>(N) (Hostage Holding of a Department of Correction Employee), or Section ~~10~~ <u>12</u>▓~~(R)~~ (Riot); up to 30 days~~,~~<u>.</u> ~~a~~ <u>Any</u> inmate found guilty of these offenses shall be reviewed for placement in Administrative Segregation prior to the completion of the punitive segregation sanction;

        2.   for any class A offense committed by an inmate who is a verified member of a security risk group in accordance with Administrative Directive 6.14, Security Risk Group; up to 20 days;

        3.   for all other Class A offenses: up to 15 days;

        4.   for Class B offense: up to 10 days; and

        5.   for Class C offense: punitive segregation may not be imposed except when the criteria of Section ~~8~~ <u>10</u>(E) are met.

When punitive segregation is imposed for multiple offenses arising from a single incident, it may be applied concurrently or consecutively.  The maximum cumulative sentence to punitive segregation for offenses arising from a single incident shall not exceed the accumulation of two (2) consecutive sanctions.

~~A mental health professional shall personally interview and prepare a written report on any inmate remaining in segregation for more than 30 days and every three (3) months thereafter for any extended period of confinement.~~

    C.   ~~Loss~~ <u>Forfeiture</u> of Good Time.  ~~Loss~~ <u>Forfeiture</u> of good time shall be imposed in accordance with provisions of this section.

        1.   <u>Type</u>.  There shall be three (3) types of good time subject to forfeiture:

            a.   <u>Statutory Good Time</u>. ~~Statutory good time shall not be forfeited in excess of the amount earned on the date of the offense.~~ <u>An inmate may forfeit any or all statutory good time earned on the present sentence.  In the event an inmate has not yet earned sufficient good time to satisfy a forfeiture, such good time shall be deducted from any statutory good time earned</u>

Page #4

    during the course of the current ~~sentenced~~ incarceration.
- b. ~~Jail Credit~~ Presentence Good Time. ~~Jail credit~~ Presentence good time shall not be awarded at the time of sentence computation if an order to withhold credit has been issued in the disposition in a disciplinary report during presentence confinement. The amount of credit ordered to be withheld shall be proportionate with the seriousness of the offense and the inmate's disciplinary record. The actual credit withheld shall not exceed the amount earned during presentence confinement. ~~Jail credit~~ Presentence good time shall not be subject to forfeiture for misconduct that occurs after the sentence commences.
- c. Outstanding Meritorious Good Time. Outstanding ~~m~~Meritorious ~~g~~Good ~~t~~Time shall be subject to forfeiture in the amount earned on the date of the offense subject to the discretion of the Investigator or the Hearing Officer, and the Warden's designee.

2. Amount. The maximum amount of good time which an inmate may ~~lose~~ forfeit~~, except as provided in subpart (3) below,~~ shall be: (a) 90 days for a Class A offense; (b) 60 days for a Class B offense; and (c) 15 days for a Class C offense~~.~~
3. ~~Extra Good Time Loss Forfeiture. Enhanced good time forfeiture may occur as follows:~~, except as authorized below:
   - a. The authorized ~~loss~~ forfeiture of earned good time may be doubled if the offense involves:
     - (1) assault on a Department of Correction employee which is classified as a Level 2 assault as defined in Administrative Directive 6.6, Reporting of Incidents;
     - (2) the use of a dangerous instrument against another person;
     - (3) serious physical injury of another person; or
     - (4) a member of a security risk group committing the offense.
   - b. The authorized ~~loss~~ forfeiture of earned good time may be quadrupled if the offense involves a dangerous instrument and also results in serious injury.
   - c. If the offense is one of the following the inmate shall be subject to ~~loss~~ forfeiture of all earned good time:
     - (1) Section ~~10~~ 12(D) (Assault on a Department of Correction Employee), which is classified as a Level 1 assault as defined in Administrative Directive 6.6, Reporting of Incidents;
     - (2) Section ~~10~~ 12(N) (Hostage Holding of a Department of Correction Employee);
     - (3) Section ~~10~~ 12(J) (Felonious Misconduct); or
     - (4) Section ~~10~~ 12(S) ~~(R)~~ (Riot).

D. Penalties. The following penalties may be imposed:
1. Reprimand;
2. Loss of recreation privilege up to ~~15~~ 30 consecutive calendar days;
3. Loss of telephone privileges up to ~~30~~ 90 consecutive calendar days. The sanction may be compounded by ~~continually~~ doubling the time frame for each successive

Page #5

      conviction of Security Tampering relating to telephone privileges;
   4. Loss of commissary privileges up to ~~30~~ 90 consecutive calendar days;
   5. Loss or modification of social visiting privileges up to ~~30~~ 60 consecutive calendar days;
   6. Extra duty up to ~~16~~ 24 hours which must be completed within one (1) week of disposition;
   7. Confinement to quarters up to ~~15~~ 30 consecutive calendar days;
   8. Loss of social correspondence privilege up to ~~30~~ 60 consecutive calendar days;
   9. Restitution for property theft or damage; and
   ~~10. Restitution for facility urinalysis and/or urinalysis lab fees.~~

E. <u>Increases</u>. When an inmate has been found guilty for the third time in any six (6) month period arising from separate incidents, the sanction for the instant offense may be taken from those authorized for the next higher class of offense. If the instant offense is a Class A offense, then up to four (4) penalties authorized in Section ~~8~~ <u>10</u>(D) above may be imposed and up to 120 days of good time may be forfeited.

F. <u>Suspended Sentence</u>. A disciplinary sentence for a Class A offense may not be suspended. A disciplinary sentence for a Class B or C offense may be suspended for a period not to exceed 60 days. If the inmate does not commit a classified offense under this Code during the period of suspension, the suspended sentence shall not be imposed. If the inmate commits a classified offense during the period of the suspension, the suspended sentence and any sentence resulting from the new offense shall be imposed. A sentence resulting from an offense committed during the time of a previously suspended sentence cannot be suspended.

G. <u>Additional Sanctions Related to Security Risk Groups</u>.
   1. <u>Security Risk Group Affiliation Violation</u>. When an inmate is ~~charged and~~ found guilty of ~~the violation of~~ Security Risk Group Affiliation the inmate shall ~~automatically and~~ without further hearing be designated as a Security Risk Group Member and, in addition to any applicable sanctions ~~enumerated in accordance with this Directive~~, shall be subject to ~~any additional behavior management controls imposed in accordance with~~ <u>the provisions of</u> Administrative Directive 6.14, Security Risk Groups.
   2. <u>Security Risk Group Safety Threat Violation</u>. When an inmate is ~~charged and~~ found guilty of ~~the violation of~~ Security Risk Group Safety Threat the inmate shall ~~automatically and~~ without further hearing be designated as a Security Risk Group Safety Threat Member and, in addition to any applicable sanctions ~~enumerated in accordance with this Directive~~, shall be subject to ~~any additional behavior management controls imposed in accordance with~~ <u>the provisions of</u> Administrative Directive 6.14, Security Risk Groups.
   3. <u>Additional Violations</u>. An inmate who has been verified as a Security Risk Group Member in accordance with Administrative Directive 6.14, Security Risk Groups, shall ~~automatically and~~ without further hearing be designated as a Security Risk Group Safety Threat Member if ~~charged and~~ found guilty of any of the following disciplinary violations:


Page II 6

   a. Assault; (Section ~~10~~ 12(C))
   b. Assault on a Department of Correction Employee; (Section ~~10~~ 12(D))
   c. Contraband ~~Class~~ A (Possessing a Dangerous Instrument); (Section ~~10~~ 12(F))
   d. Creating a Disturbance; (Section ~~10~~ 12(G))
   e. Fighting; (Section ~~10~~ 12(K))
   f. Impeding Order; (Section ~~10~~ 12(O)) and/or
   g. Security Risk Group Safety Threat; (Section ~~10~~ 12(V)). In addition to any applicable sanctions ~~enumerated in accordance with this Directive~~, the inmate shall be subject to ~~any additional behavior management controls imposed in accordance with~~ the provisions of Administrative Directive 6.14, Security Risk Groups.

 H. **Degree**. The sanctions imposed shall be proportionate to the seriousness of the offense and the inmate's disciplinary record and shall be administered to regulate an inmate's future behavior.

~~9~~11. **Attempt, Conspiracy and Accessory**. When supported by the evidence the offenses of Attempt, Accessory and Conspiracy shall be deemed to be included in the substantive offense without having to be separately charged. Attempt, Accessory and ~~Conspiracy~~ shall be punishable in the same degree as if the substantive offense was committed.

~~10~~12. **Class A Offenses**.
 A. **Alteration of a Specimen**. Adulterating, substituting, mislabelling or disposing of a required specimen.
 B. **Arson**. Starting a fire or causing an explosion.
 C. **Assault**. Physically attacking another person with or without the use of an object or substance.
 D. **Assault on a Department of Correction Employee**. Intentionally striking or attacking a Department of Correction Employee with or without the use of an object or substance or behaving in such a reckless manner that one's actions causes a strike of a Department of Correction Employee.
 E. **Bribery**. Giving or agreeing to give to any person a benefit intended to influence that person's action or decision.
 F. **Contraband, Class A**. Making, transferring or possessing: a dangerous instrument; any item of use in making, attempting or aiding an escape; unauthorized currency; drugs or drug paraphernalia; an intoxicating substance; unauthorized medication; or a tattoo machine or equipment.
 G. **Creating a Disturbance**. Causing or participating in a general disturbance which involves any of the following Level 1 incidents in accordance with Administrative Directive 6.6, Reporting of Incidents: group disturbance; inmate work stoppage; organized disobedience, major destruction/disablement of state property; or any other incident which causes the alert of the Department's Correctional Emergency Response Team(s).
 H. **Destruction of Property, Class A**. Damaging property with actual or replacement value of one hundred dollars ($100) or more.
 I. **Escape**. Leaving a correctional facility without authorization; leaving escorted custody without permission; exceeding assigned limits of community release without permission; or failing to properly return from furlough.
 J. **Felonious Misconduct**. Committing an act that would be a felony under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

*Page 17*