K. Fighting. Engaging in physical combat with another person.

L. Flagrant Disobedience. Disobeying a clearly stated order in a way that conveys a deliberate challenge to authority and jeopardizes the safety, security and orderly operation of the facility.

M. Hostage Holding. Taking, detaining or holding another person against the other person's will.

N. Hostage Holding of a Department of Correction Employee. Taking, detaining or holding of a Department of Correction employee against the employee's will.

O. Impeding Order. Impeding the order or security of the unit by intentionally or recklessly causing a grave risk of alarm, unauthorized assembly or engaging in disorderly conduct which severely interferes with the unit's normal operations.

P. Interfering with Safety or Security. Interfering with, resisting or obstructing the execution of a staff member's official duties.

Q. Intoxication. Being under the influence of alcohol or any intoxicating substance, or a drug other than a drug officially prescribed or issued by staff; or when the presence of any of these substances in the body is established by an approved scientific method of analysis.

R. Refusal to Give a Specimen. Refusing a direct order to provide a blood or urine specimen within three (3) hours.

S. Riot. Inciting or participating in a general disturbance which results in a loss of control of all or a portion of a unit, serious injury, serious property damage or other organized disobedience to the rules of the unit. A charge of riot may be used only when the Commissioner declares that a riot has occurred and authorizes use of the charge.

T. Secreting Identity. Presenting false identification or wearing a hood or other garment for the purpose of concealing identity.

U. Security Risk Group Affiliation. Possessing or displaying any materials, symbols, colors or pictures of any identified security risk group; or behaviors uniquely or clearly associated with a security risk group.

V. Security Risk Group Safety Threat. Activity, behavior, status as a recognized Security Risk Group Leader or involvement in an event associated with a Security Risk Group which jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility.

W. Security Tampering. Tampering with locking, security or safety devices, or any unauthorized or fraudulent use of the phone [illegible] system.

X. Self-Mutilation. Intentionally inflicting bodily injury to oneself including tattooing and ear/nose piercing.

Y. Sexual Misconduct. Touching the sexual or other intimate parts of another, including kissing, for the purpose of gratifying the sexual desire of either party.

Z. Theft, Class A. Stealing or possessing stolen property with actual or replacement value equal to or in excess of one hundred dollars ($100).

AA. Threats. Making verbal or written statements, or engaging in physical conduct ~~intended to cause~~ causing fear in another person.

BB. Violation of Program Provisions. Failing to comply with the procedures or restrictions of community release, furlough or other special program.

~~11~~13. Class B Offenses.

A. Bartering. Conducting any unauthorized transaction for which payment of any kind is made, promised or expected.

Page # 8

  B. Causing a Disruption. Inciting others or engaging in disruptive behavior which interferes with normal operations; ~~:~~ for example; setting nuisance fires; harassing others by taunts; name calling or pushing; rattling bars; banging utensils or other objects or in any other manner creating loud or disturbing noises.

C. Contraband, Class B. Being in possession of unauthorized items; or of inmate personal property, state issue, or commissary items in excess of authorized amounts; or displaying nude or sexually explicit pictures.

D. Destruction of Property, Class B. Damaging any property with actual or replacement value less than one hundred dollars ($100).

E. Disobeying a Direct Order. Failing to comply expeditiously with an instruction of a staff member or failing to comply with any disciplinary sanction imposed.

F. Gambling. Betting for money, personal gain, or anything of value.

G. Giving False Information. Intentionally misleading staff in the course of official duties.

H. Insulting Language or Behavior. Using abusive or obscene language or making an obscene gesture.

I. Misdemeanant Misconduct. Committing an act that would be a misdemeanor under the Connecticut General Statutes that is not a classified offense under this Code. Charging under this section requires the authorization of the Unit Administrator or designee and a specific statutory citation.

J. Out of Place. Being present in an area without authorization, loitering or being in a location longer than necessary to accomplish an authorized purpose.

K. Public Indecency. Lewdly exposing one's body to the public or fondling/caressing one's intimate body parts before the public.

L. Theft Class B. Stealing or possessing stolen property with actual or replacement value of less than one hundred dollars ($100).

~~12~~14. Class C Offenses.

A. Disorderly Conduct. Any nuisance or annoying behavior which interferes with the unit's order.

B. Malingering. Failing to carry out instructions or assignments, in a timely manner.

C. Sanitary/Housing Violation. Failing to maintain proper sanitary condition in personal hygiene, toilets, housing, or dining areas.

D. Violation of Unit Rules. Failing to abide by a published unit rule.

~~13~~15. Performance Failure Citation. An inmate assigned to Community Release may be issued a Performance Failure Citation (PFC), at the discretion of a supervisor, for failure to meet a treatment plan objective or program requirement. In such case, the supervisor shall use a Performance Failure Citation Form, CN 9501, (Attachment A). A copy shall be given to the inmate, and the inmate shall be afforded an opportunity to contest the factual accuracy of the Citation in writing to the Community Services Unit Administrator. No administrative action other than penalties under Section ~~8~~ 10(D) or additional supervision or program requirements may result from a Citation. Following disposition, the original shall be included in the inmate's unit file. If an inmate refuses to accept the Citation, a Disciplinary Report shall be issued on the charge of Violation of Program Provisions by a Department employee. An unjustified Citation is a basis for finding the accused not guilty on the Disciplinary Report.

~~14~~16. Disciplinary Coordinator. Each Facility Administrator shall appoint a managerial employee as a Disciplinary Coordinator who shall coordinate the disciplinary functions of the facility and who shall ensure that the



facility complies with the policies and procedures of the Code. The Disciplinary Coordinator shall be responsible for the processing and distribution of all records and reports under this Code unless responsibility is expressly delegated to another.

In addition to the administrative duties, the Disciplinary Coordinator shall have authority to: (1) substitute a charge on a Disciplinary Report in accordance with the provisions of Section ~~30~~32 of the Code; (2) defer prosecution of a Disciplinary Report in accordance with the provisions of Section ~~31~~33 of the Code; and (3) dismiss a Disciplinary Report, prior to hearing, that does not serve the disciplinary interests of the facility. If a Disciplinary Report is deferred, dismissed or the charge substituted under this Section, the Disciplinary Coordinator shall send a copy of the Report and a memorandum of explanation to the Reporting Employee and the Facility Administrator, which the Facility Administrator shall retain on file a minimum of six (6) months. A back up Disciplinary Coordinator shall be appointed by each Unit Administrator to act in the absence of the Disciplinary Coordinator. Each Community Services Unit Administrator shall also appoint a Disciplinary Coordinator in accordance with this Section.

~~15.~~17. Informal Disposition. Violations of rules and regulations ~~and conflicts with authority~~ may be disposed through Informal Disposition when Informal Disposition is deemed sufficient to regulate an inmate's behavior.

A. Initiation. Informal Disposition may be initiated (1) by the Reporting Employee or (2) by a Shift Commander or Unit Manager as an alternative to a Disciplinary Report.
   1. When initiated by the Reporting Employee the Informal Disposition Report Form, CN 9502, (Attachment B) shall be completed, including the recommended penalty(s), and shall be appropriately signed. The completed form shall be received by the Shift Commander or Unit Manager not later than eight (8) hours from the alleged misconduct.
   2. When a Shift Commander or Unit Manager initiates Informal Disposition based on a disciplinary report, they shall prepare form CN 9502 and inform the Reporting Employee of the action.

B. Review. Not later than 24 hours of receipt of an Informal Disposition initiated by the reporting staff member, the Shift Commander or Unit Manager shall: (1) deny use of Informal Disposition; (2) approve Informal Disposition and the recommended penalty(s); or (3) approve Informal Disposition and impose an alternative penalty(s). The reporting employee may confine an inmate to quarters pending review of the informal disposition. In such case an incident report shall be completed, an entry made in the Station Log, and the Shift Commander or Unit Manager notified immediately. The Shift Commander, Unit Manager or higher authority may intervene in this placement.

C. Disposition. Penalties shall be ~~limited to those enumerated in~~ consistent with Section ~~8~~ 10(D) of the Code with the exception of restitution, which shall not be authorized under Informal Disposition. No more than three (3) penalties may be imposed and the duration of any penalty imposed shall not exceed one (1) week.

D. Notification. Upon completion of review by the Shift Commander or Unit Manager, the inmate and the Reporting Employee shall be notified of the Informal Disposition. Notification to the inmate



shall include ~~an acknowledgment, signed by the inmate, that the inmate accepts Informal Disposition.~~ a space for the inmate to sign acknowledging of the disposition.

E. Refusal. If the acknowledgment of Informal Disposition is not signed~~, for whatever reason,~~ it shall constitute a refusal~~. In the event of a refusal,~~ and a Disciplinary Report shall be initiated.

F. Records and Reporting. No record of an Informal Disposition shall be kept in an inmate's Master File or ~~computer~~ automated file. A record of all Informal Dispositions shall be maintained at the unit to allow for record keeping and reporting under Section ~~39~~43. ~~and to meet the conditions of Section 37~~39 ~~of this Directive.~~

~~16~~18. Initiation of Disciplinary Report. A Disciplinary Report Form, CN 9503, (Attachment C) shall be prepared by a staff member, the Reporting Employee, upon detection of an act which gives cause for formal disciplinary action. A separate Disciplinary Report shall be prepared for each offense charged. Only the most serious possible charge relating to an offense shall be charged to a single act. When additional charges are justified as a result of sequential behaviors during an incident, charges may be filed separately.

A. Facility Procedure. The Disciplinary Report shall be delivered to a Custody Supervisor or Unit Manager. Provision shall be made to provide the Reporting Employee, upon request, with a copy of page one of the Disciplinary Report before the end of the shift.

B. Community Release Procedure. The Disciplinary Report shall be referred to the appropriate Unit Administrator or managerial designee.

~~17~~19. Custody Supervisor/Unit Manager. A Custody Supervisor or Unit Manager shall be responsible to:

A. Manage disciplinary functions during the shift.

B. Review the Disciplinary Report to ensure that it is complete and that, on its face, the evidence supports the charge.

C. ~~Assign a report number to the disciplinary report in accordance with Section 39 prior to delivery to the accused.~~

D. Sign the report.

E. Initiate delivery of the Report to the accused and ~~shall~~ forward the original copy to the Disciplinary Investigator.

~~18~~20. Administrative Detention. The Shift Commander may remove an inmate from population, in accordance with Administrative Directive 9.4, Restrictive Status, pending a disciplinary disposition ~~only~~ when justified for reasons of security or order. If an inmate is removed from population, the Unit Administrator shall review the case within 72 hours of placement in Administrative Detention to determine whether continued confinement in the status is necessary. The date and time of placement in Administrative Detention shall be recorded on the Disciplinary Report. If punitive segregation is subsequently imposed any time spent in Administrative Detention shall be credited toward the sentence on a day-for-day basis.

~~19~~21. Notice of Disciplinary Proceedings. A complete and legible copy of the Disciplinary Report shall be delivered to the inmate within 24 hours of the discovery of the inmate's alleged misconduct. ~~Extenuating circumstance may justify exceeding this time frame at the discretion of the Hearing Officer.~~

~~20~~22. Disciplinary Investigator. Upon receipt of a disciplinary report, the Investigator shall assign a report number in accordance with Section 39 of the Code. An Investigator shall conduct investigations into the allegations of misconduct of each Disciplinary Report that goes to

Page # 11

hearing and shall have authority to dispose a Disciplinary Report prior to the hearing pursuant to Section ~~21~~ 22 of the Code. Investigators shall be appointed by the Unit Administrator and must be certified by the Center for Training and Staff Development prior to assuming their duties.

~~21~~22. Disciplinary Investigator Disposition. The Investigator shall interview the accused inmate. If the inmate chooses to plead guilty prior to a Disciplinary Hearing, the Investigator may accept the plea and dispose the Disciplinary Report unless the inmate has been charged with Assault on a Department of Correction Employee, Creating a Disturbance, Escape, Felonious Misconduct, Hostage Holding of a Department of Correction Employee or Riot, or Security Risk Group Safety Threat. If the Investigator elects to dispose the Disciplinary Report, the Investigator ~~may~~ shall impose sanctions consistent with Section ~~8~~10 of this Code up to half the maximum allowed under Sections ~~8~~ 10(B) and ~~8~~ 10(C). If the Investigator disposes the Disciplinary Report, no appeal shall be permitted. Before accepting a guilty plea, the Investigator shall ensure that the inmate understands that a guilty plea precludes an appeal. The inmate must sign the statement on the Disciplinary Report that a guilty plea is made voluntarily and with the knowledge that no appeal is permitted. A Disciplinary Process Summary, CN 9504, (Attachment D) shall be prepared by the Investigator when an inmate pleads guilty pursuant to this section. Investigator dispositions shall be consistent with the Unit's disciplinary policy and interests.

~~22~~23. Pre-hearing Investigation. If the Investigator does not dispose the Disciplinary Report, the Investigator shall inform the inmate about the process of investigation and hearing and ensure the inmate receives a copy of the Disciplinary Report at least 24 hours prior to any Disciplinary Hearing. The Investigator shall determine if the accused inmate desires an Advocate and shall inform the inmate of the ~~choices~~ available Advocates. ~~The choice shall be an Advocate scheduled to be on duty at the time of the hearing.~~ The Investigator shall indicate the inmate's decision on the ~~report~~ Disciplinary Investigator Report, CN 9505 (Attachment E), and if an Advocate is selected, shall promptly notify the Advocate. The Disciplinary Investigator shall determine if the accused inmate desires a witness(es) and shall list the name and number of each appropriate inmate witness and the name and position of any staff witness. ~~The Disciplinary Investigator Report shall indicate the accused's refusal of advocate and/or witness by the inmate's signature.~~ If an inmate declines an Advocate or identifies no witnesses, the decision(s) shall be recorded on the Disciplinary Investigator Report, which must be signed by the inmate. Any ~~F~~failure to obtain signatures shall be for good cause as determined ~~and documented~~ by the Hearing Officer ~~at the Disciplinary Hearing~~ and documented on the Disciplinary Process Summary. The Investigator shall conduct an investigation into the circumstances of each Disciplinary Report that goes to hearing and gather all information deemed relevant to the Disciplinary Report. The investigation shall be initiated within the next business day following the time the Disciplinary Report is issued. The Investigator shall report the results of the investigation on the Disciplinary Investigation Report~~, CN 9505, (Attachment E)~~. The Investigator shall prepare a hearing docket and ensure that a Report is brought to hearing in accordance with the time frames established in Section ~~29~~ 30(A) of the Code and shall ensure that the inmate, any witnesses, the Advocate and evidence along with appropriate forms are available at the scheduled hearing.

~~23~~24. Advocate. An Advocate shall meet with the inmate at least 24 hours prior to the hearing, conduct a thorough investigation independently of

Page # 12

the Investigator, [redacted] assist the inmate in preparing a defense, and appear at and assist in making a presentation at a formal disciplinary hearing. ~~If the accused inmate's chosen Advocate fails to appear at the Hearing, the inmate may, in writing, accept the assistance of another staff member in making a formal presentation.~~ If the advocate selected cannot appear at the hearing, another Advocate may be appointed to assist the inmate. The accused inmate may, in writing, withdraw a request for an Advocate at the time of the hearing.

Each Unit Administrator shall appoint a minimum of three (3) staff members, including both custodial and treatment personnel, to serve as Advocates. The names of the Advocates shall be made known to all staff and inmates through appropriate notice.

24. Defense Preparation. An accused inmate shall be allowed a minimum of 24 hours, from notice to hearing, to prepare a defense.

A. Waiver. An inmate may waive the 24 hour period by executing a written waiver.

B. Exception. When an inmate's release is imminent or a transfer is necessitated, an expedited disposition may be conducted in accordance with Section ~~27~~ of the Code which may cause the 24 hour period to be constricted.

25. Witnesses. An accused inmate shall have an opportunity to present witness testimony at a disciplinary hearing. Witness testimony must be truthful, relevant, freely given and not redundant. To appear at a disciplinary hearing, an individual must be present at the unit and pose no threat to an orderly disciplinary hearing or to personal safety. If an otherwise qualified witness is unable to appear, written testimony may be submitted.

A. Identification. The Investigator shall ascertain whether the inmate wants to call witnesses. If so, the Investigator shall record the names on the Disciplinary Investigation Report. The inmate's failure to identify witnesses to the Investigator shall make any subsequent request for a witness subject to the Hearing Officer's discretion.

B. Testimony. The Investigator shall interview prospective witnesses; list the witnesses and the nature of the testimony on the Disciplinary Investigation Report; and schedule the admissible witnesses for the disciplinary hearing. No inmate witness shall be compelled to testify. The inmate shall be responsible for providing written testimony for any community witnesses.

C. Staff Witness. A staff member, called upon for testimony, ~~may~~ shall submit such testimony in writing or in person at the discretion of Hearing Officer.

26. Hearing Officer. A Hearing Officer shall preside over any formal disciplinary hearing, serve as the trier of fact, and adjudicate any referred Disciplinary Report. The Complex Warden shall appoint and assign an adequate number of Hearing Officers, and acting Hearing Officers, to meet the needs of the Complex. Hearing Officers and acting Hearing Officers shall be certified by the Center for Training and Staff Development prior to assuming duty. The Hearing Officer shall have authority to include any person as a witness, may limit the testimony of any witness which is redundant or irrelevant and may order the presentation of any documents or evidence necessary for the conduct of a disciplinary hearing. The Hearing Officer may exclude or eject from the disciplinary hearing any person whose behavior poses a threat to an orderly hearing or jeopardizes the safety of any person. The Hearing Officer shall determine the hearing requirements to ensure a



professional proceeding.

~~27~~29. Expedited Disposition. The disciplinary process may be expedited when an accused inmate's release is imminent or when circumstances require that the inmate be urgently transferred and it is impracticable to conduct a hearing at the receiving facility. In such case, an inmate must receive the Disciplinary Report, must be afforded a chance to prepare a defense including nominating witnesses, must receive the services of an Advocate if desired, and any hearing must be in accordance with Section ~~28~~ 31 of the Code.

~~28~~30. Transferred Inmate's Disciplinary Process. If an inmate is transferred prior to disposition of a Disciplinary Report, the Report shall be disposed at the receiving unit. The Disciplinary Coordinators of the sending and receiving unit shall coordinate the process. The receiving unit shall pick up the process at the point where the sending unit left off and assume all duties for disposing the Report except the investigation. A copy of the Disciplinary Report shall be delivered to the inmate at the time of transfer if it has been reviewed in accordance with Section ~~17~~ [illegible] and the Report shall be sent with the inmate. If the Report is not sent with the inmate, the sending unit shall be responsible for notifying the receiving unit by telecommunications that a Report is pending and for expeditiously forwarding the Report. The sending unit shall conduct an investigation, shall inform the receiving unit of the results of its investigation and of what procedural steps have been taken and shall respond to all inquires from the receiving unit or the Hearing Officer. The inmate may select an Advocate at the receiving unit and the receiving unit may request an investigation by an Advocate of the sending unit.

Interviews may be conducted by telephone including the taking of testimony for the disciplinary hearing.

~~29~~31. Hearing.

A. Time Frames. A disciplinary hearing shall be convened as soon as possible but not later than seven (7) business days of the date of the Disciplinary Report except in the event of a transfer a hearing shall be convened within 10 days business days.

B. Appearance of the Accused. An accused inmate shall be present at the disciplinary hearing: (1) unless the inmate declines to appear; (2) unless the inmate's behavior gives cause for exclusion or removal; and (3) except when confidential information is presented as described in subsection ~~(H)~~ (G) below. ~~; and (4) except when the Hearing Officer recesses for deliberation.~~ The absence of the accused inmate shall be documented on the Disciplinary Process Summary. The Hearing Officer may recess the hearing for deliberation outside the presence of the inmate.

C. Continuance. For good cause shown, a disciplinary hearing may be continued to ~~the next hearing date at the discretion of the Hearing Officer~~ a later hearing date not to exceed ten (10) business days. The Hearing Officer shall record the reason for any continuance on the Disciplinary Process Summary. Not more than two (2) continuances may be granted to the Investigator or the accused for any Report.

D. Plea. The charge as it appears on the Disciplinary Report shall be read and the inmate shall be asked to plea. If the inmate desires to plead guilty to the charge, the inmate shall so state. A plea of not guilty shall be entered by the Hearing Officer if the inmate refuses to plead or is not present. Before accepting a guilty plea, the Hearing Officer shall ensure that the inmate understands that a guilty plea precludes an appeal. The inmate must sign a statement on the Disciplinary Report that the guilty

Page # 14

plea is made voluntarily and with the knowledge that no appeal is permitted. If the inmate is unable to sign the report the Hearing Officer shall make an appropriate notation including the reasons for the inmate's inability to sign.

E. Evidence. Evidence may be physical evidence, a written statement or a document, or oral testimony. A copy or listing of any physical evidence shall be given or made available to the inmate or the inmate's Advocate by the Investigator at least 24 hours prior to the hearing. Physical evidence shall be presented at the hearing, as determined by the Investigator, whenever practicable. Otherwise, a sample, photograph, laboratory test, or a written description of the evidence shall be presented.

F. Presentation of the Case. An Investigator shall present the case against the inmate. The Investigator presenting the case need not be the Investigator who conducted the investigation. The Investigator shall read the Statement of Charge on the Disciplinary Report, explain the results of the investigation and submit a written investigative report. If the inmate is found guilty the Investigator shall present the Unit recommendation for sanction and reasons for them in the presence of the accused. The Investigator shall respond to questions from the Hearing Officer.

G. Confidential Information. Information which is material to the allegation of misconduct may be exempted from disclosure if it places another person in jeopardy or compromises the unit's security. If the Investigator believes that documentary or testimonial information should be exempted from disclosure, the Investigator shall present the information and an assessment of its credibility to the Hearing Officer outside the presence of the inmate and the inmate's Advocate. The Hearing Officer shall decide if the information should be exempt from disclosure and, if so, shall inform the inmate that there is exempted information. If the inmate is found guilty of the offense, the Hearing Officer shall state, in writing, a summary of the information, an assessment of its reliability and why it was exempted. This statement shall be maintained in a file that is not accessible to any inmate. If the Hearing Officer determines information is not confidential, the Hearing Officer may proceed with the hearing or may continue the hearing to permit the inmate time to prepare a defense.

H. Rebuttal. The accused inmate or the Advocate may be allowed to question witnesses or to rebut evidence and information presented at the disciplinary hearing subject to constraints imposed by the Hearing Officer. The Hearing Officer shall constrain the rebuttal if it is irrelevant, redundant, or disrupts an orderly hearing.

I. Defense. The inmate shall be given an opportunity to present the inmate's version of the offense, orally and/or in writing. The inmate shall be given an opportunity to present witness testimony subject to the provisions of Section ~~25~~ 27 of the Code. Witnesses may be questioned by the Hearing Officer. Defense information shall be recorded on the Disciplinary Process Summary.

~~30~~32. Substitute Charge. A charge may be substituted if it becomes apparent that the original charge was inappropriate.

A. During Pre-hearing Investigation. A Disciplinary Coordinator may substitute a charge during pre-hearing investigation by altering the original Disciplinary Report and initialing it. A copy of the Report containing the substituted charge shall be delivered to the inmate at least 24 hours prior to a hearing.

B. During Hearing. A Hearing Officer may substitute a charge during

hearing by informing the inmate of the substitute charge and taking a plea. A substitute charge renders the original charge dismissed. If the inmate pleads not guilty to the substituted charge, a continuance may be granted upon request of either the Investigator or the accused inmate to allow for further investigation or for defense preparation.

~~31~~33. Deferred Prosecution. A Class A Disciplinary Report shall not be deferred. The Disciplinary Coordinator or the Hearing Officer may defer prosecution of a Class B or C Disciplinary Report for up to 60 days when the inmate's disciplinary record has been positive and the alleged offense appears to be incidental. If during the 60-day period, the inmate commits a classified disciplinary offense, the deferred Report shall be processed to disposition. Only one (1) charge may be deferred in any 60-day period, no record shall be maintained of the Report. Deferred prosecution authorized by the Disciplinary Coordinator shall be noted on the Disciplinary Report, signed and dated, and countersigned by the inmate. Any inmate who refuses to work during an inmate disturbance or inmate work stoppage, and has been issued a Disciplinary Report for ~~Flagrant Disobedience or~~ Disobeying a Direct Order, shall not have the Disciplinary Report deferred.

~~32~~34. Self-Defense. A decision that the inmate acted in self-defense may mitigate the severity of the sanction(s) imposed.

~~33~~35. Decision. The Hearing Officer shall decide the case on the basis of the hearing record. A finding of guilty shall be based on evidence that the accused inmate committed the offense. The Hearing Officer shall immediately report the decision orally to the inmate and, if guilty, the sanction imposed.

~~34~~36. Disciplinary Process Summary. The Hearing Officer shall produce the Disciplinary Process Summary Form, CN 9504, within 24 hours of the hearing excluding weekends and holidays. When a Disciplinary Report has been disposed by an Investigator in accordance with Section 23 of the Code, the Disciplinary Investigator shall complete the Disciplinary Process Summary Form. The Summary shall include the offense charged, the plea of the accused inmate, the disposition of witnesses, a summary of witness testimony, the finding and the reasons for it, the sanction(s) imposed and the reasons for it and any other noteworthy information about the hearing. A copy shall be forwarded to the Unit Administrator. A copy of this Summary shall be provided to the Investigator, the Reporting Employee and the inmate. Any testimony which might jeopardize an inmate's safety shall not be disclosed.

~~35~~37. Review by Unit Administrator. The Unit Administrator ~~may be apprised~~ shall receive a copy of the Disciplinary Process Summary within two (2) business days of the ~~hearing~~ disposition of the Disciplinary Report. With the exception of Section ~~38~~ 40 below, the Unit Administrator shall not modify the finding or the formal record but may discontinue any punishment imposed if additional punishment serves no correctional purposes or for administrative reasons.

~~36~~38. Parole. Any inmate that has been voted to Parole and is convicted of a Class A or B disciplinary offense shall be referred to the Parole Board Chairman for reconsideration.

~~37~~39. Good Time Restoration. ~~No inmate should anticipate the restoration of forfeited good time. However, in the event an inmate has maintained exceptional behavior as specified below, the inmate may make application for restoration. Upon application by the inmate the Unit Administrator may recommend that all or any portion of lost statutory good time be restored. Such recommendation should be based on exemplary conduct and outstanding performance.~~ Good time that is forfeited through the disciplinary process may be restored subject to the discretion of the

Page # 16

Complex Warden. There are two types of good time that may be restored: statutory good time and presentence good time. O.M.P.A. that is forfeited shall not be restored, but may be earned anew. At a minimum the inmate shall meet the following requirements in order to be considered for statutory good time restoration.

A. No conviction for a Class A misconduct within 60 months; Class B misconduct within 48 months; and Class C misconduct ~~or Informal Disposition~~ within 36 months prior to application.

B. Continuous work assignment with favorable work evaluations 36 months prior to application.

C. Fully successful participation in an assigned program, other than work, for 24 months prior to application.

D. No increase in classification risk level within last 60 months.

E. Consistent with Administrative Directive 6.14, Security Risk Groups, shall not be designated as a Security Risk Group Safety Threat Member.

~~No inmate presently designated as a Security Risk Group Safety Threat Member under Administrative Directive 6.14, Security Risk Groups shall be eligible to apply for good time restoration.~~

The Unit Administrator may recommend that the ~~Director~~ Complex Warden award jail credit good time that was not awarded because of misconduct, if the inmate meets all the above statutory good time requirements.

An inmate who does not qualify for restoration as a result of insufficient time served, may apply to the Commissioner through the same procedures noted above, when the inmate is within 12 months of discharge. Such inmate must have demonstrated excellent performance and be discipline free for the 12 months prior to application.

~~OMGT that is forfeited shall not be restored but may be re-earned.~~

3840. Appeals. An inmate may appeal a disciplinary action by completing the Disciplinary Hearing Appeal form CN 9507, Attachment G. Each unit shall provide Disciplinary Hearing Appeal forms, and a mailbox clearly marked "Disciplinary Appeals", for inmates to submit a disciplinary appeal. The Disciplinary Coordinator shall remove and immediately forward all appeals, along with any other appropriate documents used in the adjudication of the Disciplinary Report, to the Unit Administrator, as appropriate, who shall not delegate the authority to respond to disciplinary appeals. Disciplinary action resulting from a guilty plea shall not be subject to an appeal. The appeal must be submitted within 15 days of the receipt of the Disciplinary Process Summary by the inmate. The appropriate Unit Administrator shall respond to any appeal within 30 business days of the receipt of the appeal.

The appellate authority may alter disciplinary action in any way that serves the State's correctional objectives. The action of the Unit Administrator shall be final and not subject to further appeal.

3941. Logbooks and Disciplinary Report Numbering System. Each Disciplinary Report submitted for disposition shall be numbered using the originating unit's initials; ~~Initials;~~ followed by a two (2) digit number signifying the present year; followed by a two (2) digit number signifying the present month; followed by the sequential number in which the report was submitted starting with the number one (1) for each new month. The Disciplinary Report shall be recorded in a disciplinary logbook upon submission to the Custody Supervisor or Unit Manager, in accordance with Attachment H.

4042. Records. The original of a Disciplinary Report and a copy of the Disciplinary Process Summary and the Investigators Report shall be maintained in the inmate's Master File, except as provided in Section ~~15~~17. Information shall include findings of guilty, not guilty,

dismissal or reversal upon appeal. Statistical information shall be included in the weekly disciplinary summary prepared by the Research and Information Systems Unit. Confidential testimony which might jeopardize the safety of any person or the security of the unit shall not be placed in the inmate's Master File. The Unit Administrator shall submit the Monthly Disciplinary Summary, CN 9508 (Attachment I) to the appropriate Complex Warden on a monthly basis.

41. ~~Technical Mistakes~~ Process Failure. ~~Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, shall not be cause for the reversal or dismissal of a Disciplinary Report.~~ A serious process failure may result in dismissal by the Hearing Officer or the appellate. Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, shall not be cause for the reversal or dismissal of a Disciplinary Report.

42. Exceptions. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

State of Connecticut
Department of Correction

ADMINISTRATIVE DIRECTIVE

| DIRECTIVE NUMBER | EFFECTIVE DATE | PAGE 1 OF |
|---|---|---|
| 2.17 | March 15, 2000 | 5 |

APPROVED BY: [signature] 2/18/00

SUPERSEDES: Employee Conduct - 5/17/99

TITLE: Employee Conduct

Exhibit #9

1. Policy. Each employee of the Department of Correction shall engage in appropriate and ethical conduct while carrying out official duties and while engaged in off duty activities which directly reflect on the Department.

2. Authority and Reference.

A. Connecticut General Statutes, Sections 1-80 through 1-89, 5-266a through 5-268, 18-81, 53a-65, 53a-71 and 53a-73a.

B. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1C-01 and 2-CO-1C-04.

C. American Correctional Association, Standards for Adult Correctional Institution, Third Edition, January 1990, Standards 3-4061 and 3-4067.

D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1A-21, 3-ALDF-1C-15 and 3-ALDF-1C-23.

E. American Correctional Association, Standards for Adult for Probation and Parole Field Services, Third Edition, August 1998, Standard 3-3047.

F. American Correctional Association, Standards for Correctional Training Academies, Standard 1-CTA-1C-01.

G. Hatch Act, 5 USC, Sections 1501 through 1508.

H. Administrative Directives 6.2, Facility Post Orders and Logs; 9.6, Inmate Grievances; and 10.7, Inmate Communication.

3. Definition. For the purposes stated herein, the following definition applies:

Immediate Family. A spouse, parent or step parent, child or step child, grandparent or step grandparent, sibling or step sibling, grandchild or step grandchild.

here ④ 4. Employee Responsibility. Each employee of the Department shall act in a professional, ethical and responsible manner.

Chain of Command. Each Department employee shall become familiar with the tables of organization depicting the Department and Unit chain of command. Each employee shall show respect to any ranking member of the Department and shall obey any lawful order of a supervisor. An employee given an instruction or order which conflicts with a previous instruction or order shall inform the present supervisor of the conflict and follow the order as directed.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 2.17 | March 15, 2000 | 2 5 |

TITLE

Employee Conduct

5. Standards of Conduct.

A. Each Department employee shall:

1. Comply with all federal and state laws, regulations and/or statutes, Department and Unit Directives and lawful instructions/orders.
2. Enforce all rules, regulations and policies of the Department as appropriate.
3. Ensure that a safe, secure and sanitary work environment is maintained.
4. Remain alert, aware of, and responsive to the surroundings at all times.
5. Remain on assigned post until properly relieved and/or remain at worksite as required.
6. Comply with official notices and roll call and other instructions.
7. Meet all employee responsibilities for dependability.
8. Report any arrest, or receipt of any summons received from a law enforcement agency or court, and subsequent disposition, including conviction, to an appropriate supervisor on or by the next scheduled work day following the arrest, but no later than 48 hours of the arrest or receipt of summons. This requirement shall not apply to summons received for minor traffic violations. An employee shall submit supporting documentation of arrest, receipt of summons or disposition. Any employee on extended leave shall report any arrest or receipt of summons, and subsequent disposition, including conviction, to the Unit Administrator within 48 hours.
9. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.
10. Report any condition or use of medication the employee is taking which may affect job performance or judgment to an appropriate supervisor.
11. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.
12. Act in a professional manner showing respect to other employees and the public.
13. Respect and protect the rights of inmates.
14. Maintain good stewardship of all state property and equipment.
15. Maintain appropriate demeanor at all times.
16. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.
17. Within no later than 48 hours report in writing to a supervisor when a friend or relative is or becomes incarcerated.
18. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and any other law enforcement or regulatory agency.
19. Appropriately file information as required by the State Ethics Commission.

20. Report immediately any threat, act of intimidation, harassment, physical or verbal abuse or assault to a supervisor.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, staff or inmates.
2. Excessive or unnecessary use of force.
3. Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.
4. Convey unauthorized items into or out of a facility, or other correctional unit.
5. Sleeping or inattentiveness while on duty.
6. Unauthorized distractions while on duty, e.g., reading materials, radios or televisions.
7. Abuse of sick time, accrued leave or workers' compensation.
8. Report to work under the influence of alcohol or illicit drugs, or consume alcohol while on duty or while in uniform.
9. Enter into a correctional unit when off duty unless previously authorized.
10. Engage in abusive or obscene language, threats and/or intimidating behavior.
11. Engage in unprofessional or illegal behavior, both on and off duty, that could in any manner reflect negatively on the Department of Correction.
12. Engage in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.
13. Engage in bartering, gambling or games of chance with inmates.
14. Engage in retaliation or reprisal against an inmate for engaging in activities that are protected by law or directive. Such protected activities include, but are not limited to: filing a grievance in accordance with Administrative Directive 9.6, Inmate Grievances; accessing courts; and engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communication.
15. Engage in undue familiarity with inmates which includes, but shall not be limited to, the following:

    a. any sexual contact between a staff member and an inmate and/or person under the Department's supervision, or continuing criminal sanction (e.g., parole, probation);
    b. sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;
    c. holding a position of supervisory of disciplinary authority and participating in inappropriate sexual behaviors or undue familiarity with an inmate;

    d.    personal involvement in an inmate's private or family matters outside assigned professional duties;

    e.    performance of personal favors for inmates outside assigned professional duties;

    f.    discuss with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);

    g.    discuss with an inmate personal and/or business matters of other staff;

    h.    discuss security operations of a facility with an inmate;

    i.    inconsistently enforced facility rules to favor an inmate or group of inmates;

    j.    have personal work done by an inmate;

    k.    visit, correspond with or accept telephone calls from an inmate who is under the custody of the Department (except for an immediate family member and when authorized by the Facility Administrator);

    l.    house an inmate who is under the custody of the Department (e.g., while inmate is on furlough, community release, continuing criminal sanction, etc.), at the staff member's home (except for an immediate family member and when authorized by the Facility Administrator); and

    m.    enter into a personal or business agreement with an inmate, including, but not limited, to acting as a bail bondsman for an inmate.

16.    Engage in behavior which is sexually, emotionally, or physically abusive toward the public, staff or inmates.

17.    Unauthorized appropriation or use of any property belonging to the public, state or an inmate.

18.    Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.

19.    Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.

20.    Use official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.

21.    Engage in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.

22.    Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan, political contribution, reward or promise of future employment.

23.    Engage in any political activities, which conflict with state and federal laws to include the Hatch Act.

24.    Failing to follow a lawful order.

25.    Engaging in insubordination.

26.    Failing to cooperate with a departmental investigation.

27.    Lying or giving false testimony during the course of a departmental investigation.

6. Supervision of Family Members. A Department employee shall not be employed in any position that places the employee above or under the chain of command, direct or functional, of any immediate family member or cohabitant, nor shall the employee be placed above or under the chain of command, direct or functional, of any immediate family member of the employee's spouse or cohabitant. A relationship between family members who are not immediate family as defined in Section 3 of this Directive may preclude placement of an employee in a chain of command. Such relationship shall be evaluated by the appropriate Deputy Commissioner on a case by case basis. Any employee who becomes romantically linked to another in the chain of command, direct or functional, shall notify the Unit Administrator in writing in order to make assignments consistent with the principles noted above. Similar principles shall apply to the supervision of contract employees, and the awarding, or advocating the award, of a contract to related parties as noted above.

7. Reporting Code Violations. Each Department employee shall report to a supervisor or appropriate personnel any policy violation or breach of professional conduct involving the public, staff or inmates under the jurisdiction of the Department of Correction.

8. Exceptions. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.